UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLA KNUDSEN and WILLIAM DUTRA, as the representatives of a class of similarly situated persons, and on behalf of the MetLife Options & Choices Plan,<br><br>Plaintiffs,<br><br>v.<br><br>METLIFE GROUP, INC.,<br><br>Defendant. | Civ. No. 2:23-cv-00426 (WJM)<br><br>OPINION |

In this action brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Defendant MetLife Group, Inc. ("MetLife" or "Defendant") moves to dismiss the Complaint filed by Plaintiffs Marla Knudsen and William Dutra ("Plaintiffs"), as the representatives of a class of similarly situated persons, and on behalf of the MetLife Options & Choices Plan (the "Plan") pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ECF No. 17. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion to dismiss for lack of Article III standing is **granted**. Defendant's motion to dismiss for failure to state a claim is **denied as moot**.

I.   BACKGROUND

Defendant sponsors the Plan to provide health and welfare benefits to its employees and employees of its affiliates and their families. Compl., ¶ 9. Plaintiffs are former Plan participants who obtained medical and prescription drug coverage for themselves and their family members. *Id.* at ¶¶ 4, 13-14. To fund the Plan each year, Defendant applies a fixed formula to the projected overall cost of coverage for each medical benefit option and determines the specific contribution or premium for each employee, spouse, and dependent that is to be deducted each pay period. *Id.* at ¶ 20. Defendant or its affiliates pay the balance of the cost of coverage. *Id.* During the last five years, Plan participants have paid on average about 30% of overall contributions to the Plan and MetLife has paid roughly 70%, which according to a Department of Labor form filed by the Plan was $234.5 million (72%) in 2021. *Id.* at ¶ 21; Def.'s Mot. at 5, n.8. In addition to premiums, Plan participants must subsidize the Plan with out-of-pocket costs such as co-pays, co-insurance, and deductibles.

1

*Id.* at ¶ 22. Taking such costs into account, claims are paid from the trust funds held by the Plan. *Id.*

Throughout the relevant period, the Plan hired Express Scripts[1] as its pharmacy benefit manager ("PBM"). *Id.* at ¶ 22. PBMs commonly negotiate volume discounts and rebates with drug manufacturers. *Id.* at ¶ 27. Between 2016 and 2021, the Plan earned approximately $65 million in drug rebates, which Plaintiffs allege Defendant wrongfully paid to itself for its own benefit. *Id.* at ¶¶ 3, 33. Had the drug rebates been properly allocated, Defendant "may have reduced co-pays and co-insurance for pharmaceutical benefits" and "may have distributed rebates to participants in proportion to their contributions to the Plan." *Id.* at ¶ 36. Instead, Plaintiffs claim they were deprived of distributions or paid excessive amounts towards the cost of coverage, co-pays, and/or co-insurance. *Id.* at ¶ 37.

Plaintiffs filed suit on January 25, 2023 derivatively on behalf of the Plan and on behalf of "all participants and beneficiaries of the Plan since January 24, 2017, excluding" Plan fiduciaries. *Id.* at ¶ 43. Plaintiffs seek monetary and equitable relief under 29 U.S.C. § 1132(a)(2) and (a)(3) for the following violations of ERISA: establishment of trust and anti-inurement, 29 U.S.C. § 1103(a), (c) (Count I); prohibited transactions with a party-in-interest, 29 U.S.C. § 1106(a)(1)(D) (Count II); prohibited transactions with a fiduciary, 29 U.S.C. § 1106(b)(1), (b)(3) (Count III); breach of fiduciary standard of care, 29 U.S.C. § 1104(a)(1) (Count IV).

Defendant now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of constitutional and statutory standing. Additionally, Defendant argues that dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under ERISA.

## II.   DISCUSSION

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for challenging Article III standing, which is a component of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Art. III § 2. The burden of establishing jurisdiction rests with the party invoking federal court jurisdiction. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016); *Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011). Plaintiff must "clearly ... allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to

---

[1] Plaintiffs do not challenge Defendant's decision to hire Express Scripts. Pls.' Opp'n Br. at 22, n. 6.

2

a defendant's conduct, and that (3) is likely to be redressed by favorable judicial intervention. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In evaluating a facial challenge to jurisdiction pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir.2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). Since Plaintiffs' claims are based on a health benefits plan referenced in and integral to the Complaint, the Court may consider the Plan documents[2] without converting a motion to dismiss into a motion for summary judgment. *See Univ. Spine Ctr. v. Anthem Blue Cross Blue Sheild* [sic], No. 18-2912, 2018 WL 6567702, at *2 (D.N.J. Dec. 13, 2018).

B. <u>Article III Standing Analysis</u>

In challenging standing, Defendant does not dispute that monetary harm is a concrete injury. *See Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005). Rather, Defendant posits that Plaintiffs are seeking extracontractual benefits because 1) Plaintiffs do not allege that they were denied any promised health benefits or had to pay higher costs than those set forth in the Plan's governing documents; and 2) Plaintiffs were not entitled to the drug rebates under the Plan's governing documents, which states in pertinent part:

> *The Plan Sponsor (MetLife) and Claims Administrators (Express Scripts or Aetna) may receive rebates for certain drugs included on the Formulary.* These rebates are not considered in calculating any Co-Payments or Coinsurance under the Plan. The Plan Sponsor applies these rebates towards Plan expenses.

*See e.g.,* 2020 Options Plan Medical Plan SPD at MTD-0662, Rosenberg Decl. Ex. 5 (emphasis added). *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006) ("ERISA requires 'that any contractually accrued rights be discernible from the written terms of the formal ERISA plan documents themselves.'" (citation omitted)).

---

[2] Summary Plan Descriptions ("SPDs") contain information regarding the Plan and by statute, must be provided to plan participants. 29 U.S.C. § 1022. The Court rejects Plaintiffs' contention that the SPDs may not be considered because Defendant provided only excerpts for the Court's convenience. *See e.g., Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (considering excerpts from user manual on motion to dismiss); *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, n.1 (W.D. Pa. 2019) (taking judicial notice of excerpted 10-K and shareholder meeting documents attached to motion to dismiss). In any event, Defendant has offered to provide complete copies upon request. *See* Declaration of David M. Rosenberg ("Rosenberg Decl."), at n.1, ECF No. 26-2.

3

Notwithstanding these express terms, even if Plaintiffs are correct that the drug rebates belonged to the Plan, Plaintiffs must allege a concrete individual harm to have standing. ERISA § 502(a)(2) and (3) provides that a civil action may be brought:

> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;[3]
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan…

29 U.S.C. § 1132(a) (footnote added).

A plaintiff suing for breach of fiduciary duty under ERISA § 502(a)(2) does so as a plan representative and hence must identify an injury to the Plan and seek relief that "'inures to the benefit of the plan as a whole.'" *Smith v. Medical Benefit Admin. Group, Inc.*, 639 F.3d 277, 282-83 (7th Cir. 2011) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985)); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (§ 502(a)(2) "does not provide a remedy for individual beneficiaries"). However, plaintiffs who themselves have not suffered an injury in fact cannot assert standing as plan representatives based on injuries to the plan. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020) (finding plaintiffs had no standing to sue as representatives of plan because "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact"); *see Perelman v. Perelman*, 793 F.3d 368, 375-76 (3d Cir. 2015) (rejecting plaintiff's claim that he need not prove individualized injury insofar as he seeks monetary equitable remedies in a "derivative" capacity on behalf of plan); *Scott v. UnitedHealth Grp., Inc.*, 540 F. Supp. 3d 857, 865 (D. Minn. 2021) ("a necessary predicate to a participant bringing broader claims on behalf of the plan is a showing of a concrete and particularized injury to the participant herself.").

ERISA § 502(a)(3) is a "catchall" provision that "authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations." *Varity*, 516 U.S. at 490. "[C]laims demanding a monetary equitable remedy [under § ERISA 502(a)(3)]… require

---

[3] 29 U.S.C.A. § 1109(a) states: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

4

the plaintiff to allege an individualized financial harm traceable to the defendant's alleged ERISA violations." *See Perelman*, 793 F.3d at 373; *see e.g., Thole*, 140 S. Ct. at 1618-19 (affirming dismissal of claims for monetary and injunctive relief under § 502(a)(2) and (a)(3) for lack of standing where win or lose, plaintiffs' individual retirement benefit payments would remain same despite alleged $750 million plan loss); *Horvath v. Keystone Health Plan East, Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (holding class representative lacked Article III standing to assert claims for restitution or disgorgement pursuant to § 502(a)(3) because she did not demonstrate individual right to recover defendant's profits); *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 417 (3d Cir. 2013) (noting that disgorgement claim for ERISA breach is measured by defendant's profits rather than plaintiff's financial loss and interpreting *Horvath* to hold that "when a *plan* has the right to the profit, the individual plaintiff has not suffered a constitutional injury." (emphasis added)).

To determine whether Plaintiffs have alleged individual injury, the Court must examine whether the Plan is a type of defined benefit plan or a defined contribution plan. *See Thole*, 140 S. Ct. at 1618 (explaining it was of "decisive importance" to case that retirement plan at issue was "defined-benefit" plan where retirees received fixed monthly payment that did not fluctuate with value of plan regardless of allegedly poor investment decisions by plan fiduciaries); *see also Perelman*, 793 F.3d at 375-76 (finding no standing to seek disgorgement of profits in defined benefit pension plan where plaintiff failed to show "an individual right" to defendant's profit from alleged breach of fiduciary duty since payments to which plaintiff was entitled were fixed).

A defined benefit plan, which is more in the nature of a contract, *see Thole*, 140 S. Ct. at 1620, is "funded by employer or employee contributions, or a combination of both," and consists of "a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "The structure of a defined benefit plan reflects the risk borne by the employer. Given the employer's obligation to make up any shortfall, *no plan member has a claim to any particular asset that composes a part of the plan's general asset pool.*" *Id.* at 440 (emphasis added). Plan participants also do not possess any equitable[4] or property interest in a defined benefit plan; thus, losses to the plan assets do not constitute injuries to the plan *participants*. *See Thole*, 140 S. Ct. 1619-20 (rejecting analogy to trust law because participants in defined-benefit plan are not "similarly situated" to beneficiaries of private trust or to participants in defined-contribution plan).

---

[4] In the Complaint, Plaintiffs allege that Defendant's transfer of drug rebates to itself "denied their *equitable* interest in Plan drug rebates." Compl., ¶ 37 (emphasis added). However, Plaintiffs now claim they do not rely on an "equitable ownership" theory of standing. Pls.' Opp'n Br. at 14.

5

By contrast, in a defined *contribution* plan, "the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole,* 140 S. Ct. at 1618. A "key feature" of a defined contribution plan is that plan assets are segregated into *individual* accounts and each participant's benefits are based on the amount in his or her individual account." *Scott v. UnitedHealth Grp., Inc.,* 540 F. Supp. 3d 857, 864 (D. Minn. 2021) (emphasis added); 29 U.S.C. § 1002(34). Thus, "malfeasance by a plan fiduciary that adversely affects the value of the assets held in such an [individual] account will support a suit under sections 409 and 502(a)(2) regardless of whether the wrongdoing affects one account or all accounts in the plan." *Smith v. Med. Benefit Administrators Grp., Inc.,* 639 F.3d 277, 283 (7th Cir. 2011). *See e.g., McCaffree Financial Corp. v. ADP, Inc.,* No. 20-5492, 2023 WL 2728787, at *6-7 (D.N.J. March 31, 2023) (finding plaintiffs in defined contribution plan had standing to sue for excessive total plan and recordkeeping costs as those pled plan-wide injury affecting all participants but no standing to challenge investments in which plaintiffs did not invest); *Scott,* 540 F. Supp. 3d at 864 (explaining that cases where plaintiffs have Article III standing to allege reduction of plan assets involve defined contribution plans).

The Plan in this case is analogous to a defined benefit plan that was at issue in *Thole.* Here, the Plan is a self-funded healthcare plan; benefits are paid by a trust holding Plan assets or by the employer rather than a third-party insurance company. Compl., ¶ 19. "[A] group health insurance plan, [] is the kind of defined benefit plan that ... typically holds no assets in trust for any individual participant." *Smith,* 639 F.3d at 283; *see also Scott,* 540 F. Supp. 3d at 864 ("employer-sponsored healthcare plans are not defined-*contribution* plans; instead, they are closely analogous to the defined-*benefit* plan at issue in *Thole,* as participants are entitled to their contractually defined benefits regardless of the value of the plans' assets."); *Gonzalez de Fuente v. Preferred Home Care of New York LLC,* No. 18-06749, 2020 WL 5994957, at *3 (E.D.N.Y. Oct. 9, 2020) (concluding self-funded plan was form of defined benefit plan where plan participants were guaranteed certain health benefits). Each year, the premiums and benefits for that year are fixed and do not fluctuate with the Plan's losses or profits.[5] Compl., ¶ 20. Consistent with a defined benefit plan, MetLife, as the employer, is responsible for paying claims out of the employee's contributions and bears the financial risk of any shortfall. *Id.* at ¶¶ 19-20.

Thus, even if Plaintiffs are correct that the drug rebates should have been allocated as Plan assets, Plan participants here have no legal right to the general pool of Plan assets just like the plaintiffs in *Thole* were not entitled to any additional money in the retirement plan beyond the monthly payments that they were "legally and contractually" entitled to

---

[5] Plaintiffs identify no caselaw that renders *Thole* inapplicable because benefits and premiums are fixed yearly rather than for the rest of Plaintiffs' lives. *Cf. Hoeffner v. D'Amato,* 605 F. Supp. 3d 467, 477 (E.D.N.Y. 2022) (explaining *Thole* does not apply where benefits are not fixed for remainder of plaintiffs' lives or even from one year to next).

receive. *See Thole*, 140 S. Ct. at 1620 (noting where employer, not plan participants, is on the hook for plan shortfalls, "the employer, not plan participants, receives any surplus left over after all of the benefits are paid"). Hence any asserted injury to the Plan is not an injury to Plaintiffs themselves. *See also Perelman*, 793 F.3d at 374 (noting that in defined benefit pension plan, "diminution in plan assets, without more, is insufficient to establish actual injury to any particular participant.").

In addition, Defendant correctly observes that Plaintiffs do not contend that they did not receive their promised benefits. Instead, Plaintiffs allege that they paid excessive out-of-pocket costs, which in the context of this kind of defined benefit-type Plan, is not an individual injury. *See e.g., Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) (concluding that in self-funded health benefit plan, plaintiffs' claim of higher deductibles, co-payments, and/or contributions due to violations of fiduciary duties under ERISA was neither concrete nor particularized injury and explaining that "individual injury would only be possible if Plaintiffs paid percentage contributions instead of the usual flat-rate co-payment or deductible"); *Gonzalez de Fuente*, 2020 WL 5994957 (finding participants who did not allege denial of any healthcare benefits promised in a form of defined benefit plan had no right to additional benefits under ERISA despite claims of high out-of-pocket costs); *Adedipe v. U.S. Bank, Nat'l Ass'n*, No. 13-2687, 2015 WL 11217175, at *6 (D. Minn. Dec. 29, 2015) ("Plaintiffs in this [defined benefit pension plan] case have not alleged such an 'actual, individualized' harm, because no one asserts that the Plan has failed to pay any of his or her benefits."), *aff'd on other grounds sub nom. Thole v. U.S. Bank, Nat'l Ass'n*, 873 F.3d 617 (8th Cir. 2017), *aff'd sub nom. Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020).

Moreover, Plaintiffs' claim that absent fiduciary mismanagement, Defendant "may" have reduced co-pays and co-insurance or that Plan participants "may" have received a proportionate distribution of rebates, is also speculative and conclusory. *See* Compl., ¶ 36. Plaintiffs have not alleged any facts to show that the purported violations of ERISA caused Plan participants to incur higher out-of-pocket costs or deprived them of distributions they would otherwise have received. *See* 2020 Options Plan Medical Plan SPD at MTD-0662, Rosenberg Decl. Ex. 5 ("rebates for certain drugs included on the Formulary… are not considered in calculating any Co-Payments or Coinsurance under the Plan."). *See e.g., Horvath*, 333 F.3d at 457 (observing that whether savings would have passed to employees was "too speculative to serve as the basis for a claim of individual loss"); *Loren*, 505 F.3d at 608 (noting that plaintiffs' claimed injury of "greater costs than they would have incurred" if there had been no ERISA violation "assumes that [employers] would pass on any increase in reimbursements or administrative fees"). Even if Plaintiffs were to succeed in their ERISA claims and any disgorged funds are deposited back into the Plan, whether each participant's costs would be reduced or distributions would be paid out, remains conjecture. *See e.g., Gonzalez de Fuente*, 2020 WL 5994957, at *3 (dismissing ERISA claims for lack of standing where plan participants' guaranteed health benefits would not change since any disgorged funds would be deposited back into plan's trust).

7

b

In sum, Plaintiffs do not have a concrete stake in the outcome of this lawsuit and have not pled facts to demonstrate an individualized injury. As each of Plaintiffs' claims for equitable and monetary relief have the same factual predicate and alleged injury, Plaintiffs do not have standing for any of their claims.[6] *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." Defendant's motion to dismiss for lack of Article III standing is **granted.**

Given that Plaintiffs lack Article III standing to assert their claims, the Court does not reach the other grounds for dismissal that Defendant raises.

## III.  CONCLUSION

For the reasons noted above, Defendants' 12(b)(1) motion to dismiss for lack of Article III standing is **granted.** Plaintiffs' claims are **dismissed without prejudice.** Defendants' 12(b)(6) motion to dismiss for lack of statutory standing and for failure to state a claim is **denied as moot.**

WILLIAM J. MARTINI, U.S.D.J.

Date: July 18, 2023

---

[6] In *Thole*, the Court rejected the contention that defined benefit plan participants must have standing to sue or "no one will meaningfully regulate plan fiduciaries." *Thole*, 140 S. Ct. at 1621 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 489 (1982) (the "assumption that if respondents have no standing to sue, no one would having standing, is not a reason to find standing"); *see also Perelman*, 793 F.3d at 376, n. 7 (rejecting notion that "if plan participants and beneficiaries lack standing to bring representative claims for monetary equitable relief, misconduct by plan fiduciaries will go unpunished" and noting that Secretary of Labor has standing to seek appropriate relief for fiduciary misconduct under § 502(a)(2)).